**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **GAYLE A. WATSON** | * | **CIVIL ACTION NO. 06-0294** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Gayle A. Watson, born December 17, 1953, filed an application for supplemental security income payments on March 3, 2003, alleging disability as of December 17, 2002, due to back and knee problems. Claimant had previously filed an application for disability benefits on December 21, 2000, which was denied initially and by Administrative Law Judge decision dated January 28, 2003.[1] (Tr. 14, 25-33). No further appeal was sought from that decision. Because that decision was final, ALJ Wahlder considered the evidence only subsequent to January 28, 2003. (Tr. 14).

---

[1] Claimant previously filed an application for disability benefits on November 5, 1998, which resulted in an unfavorable decision dated May 17, 1999. (Tr. 25). He also filed another application dated December 19, 2002. The decision dated January 28, 2003 disposed of the applications dated December 21, 2000 and December 19, 2002.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Dr. Kenneth Adatto, Orleans Orthopaedic Associates, dated July 18, 2002 to April 1, 2003**. On July 18, 2002, claimant complained of constant, moderate low back pain radiating into the hips and thighs, numbness into the lower leg with weakness, and headaches. (Tr. 129). He had had a right knee arthroscopy following a work-related injury. He was taking Hydrocodone three times a day.

On examination, claimant had a 10% loss of lumbar motion with mild paravertebral spasm. He had tenderness at L4-L5. Straight leg raising in the recumbent position was abnormal at 75+ degrees for low back pain only. Neurological examination revealed deep tendon reflexes of 2+ and equal, good motor strength, and normal sensory exam.

Right knee exam showed full range of motion, moderate pain, and medial joint line crepitus with abnormal McMurray's test. (Tr. 129-30). Left knee exam was essentially normal, except for mild patellofemoral pain and crepitus on range of motion. (Tr. 130).

Right knee x-rays showed a loose body in the posterior middle part of the knee and relatively severe medial joint line arthritis. Left knee views revealed medial joint line thinning and mild degenerative arthritis in the patellofemoral joint. Lumbar spine x-rays showed severe degenerative changes throughout the lumbar spine, a spondylolistheisis at the lumbosacral level, and lumbar instability.

Dr. Adatto's impression was chronic pain syndrome. He believed that claimant was not a candidate for invasive testing or surgery. He stated that claimant's pain was moderate to severe, which was severe enough to require him to take Schedule III narcotics that totally disabled him from work. He recommended conservative treatment with narcotics, Soma, and regular exercise. He opined that claimant's disability status was "total, permanent."

On April 1, 2003, claimant complained of back and bilateral knee pain. (Tr. 125). On lumbar examination, claimant had moderate spasm at stress only. Deep tendon reflexes were equal and active in the lower extremities. Claimant was able to heel and toe walk unaided. He had symmetrical muscular development and equal leg

3

lengths. Pulses were within normal limits. Right and left knee examinations were abnormal, showing moderate joint effusion.

Dr. Adatto's impression was lumbar degenerative disc disease and sprain/strain of the knees. He stated that claimant's evaluation and history revealed chronic pain that was unchanging. His prognosis was poor for full recovery. He recommended a home exercise program and medications. Claimant's disability status was total permanent.

**(2) Residual Functional Capacity ("RFC") Assessment dated May 13, 2003**. Dr. Charles Leo Lee opined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 133). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could perform all postural activities occasionally. (Tr. 134).

**(3) Report from Orleans Orthopaedic Associates dated June 24, 2003**. Claimant complained of back and bilateral knee pain. (Tr. 141). On lumbar examination, he had an absence of tilt and scoliosis. He had moderate tenderness of the paraspinous muscles and spinous process, with a moderate loss of motion of the spine in forward flexion and extension. He had spasm. The straight leg raising testing reproduced only low back discomfort. Reflex examinations were normal.

Claimant had good motor strength and sensation of the extremities. His pedal pulses were normal.

Dr. John Watermeier's impression was displacement of lumbar intervertebral disc. Claimant's status was stable, and prognosis was fair. Dr. Watermeier did not recommend surgery. He suggested a home exercise program, medication, and periodic review and evaluation.

Dr. Watermeier opined that claimant had a "total and permanent disability." He found that claimant had a 10 to 15% disability of the lumbar spine. He determined that claimant needed to avoid repetitive stooping or bending, repetitive lifting of over 25 to 50 pounds, prolonged sitting or standing in the same position for 45 minutes, plus/minus 15 minutes without being able to move around and change position. (Tr. 141-42). He noted that claimant was a chronic pain patient, and explained alternatives to narcotic medication including steroid injections, electrical implants, and nonsteroidal anti-inflammatory drugs and anti-epilepsy drugs. (Tr. 142). He determined that claimant's spinal disability status was "total permanent."

**(4) Records from Madisetti Pain Management dated October 3, 2003 to January 18, 2005**. On October 3, 2003, claimant complained of back and knee pain. (Tr. 175). On back and lumbar extremity examination, he had tightness, limitation of flexion, negative straight leg raising test, normal muscular system, normal

5

sensation, and normal reflexes. (Tr. 177). Dr. Narayan S. Madisetti prescribed Lorcet, Soma, and Xanax. (Tr. 178).

On October 31, 2003, claimant continued to complain of back pain and anxiety. (Tr. 168). He had breakthrough pain. The assessment was low back pain and anxiety.

On May 11, 2004, claimant complained of back and lower limb pain. (Tr. 163). Dr. Madisetti added Methadone to his medication regimen.

On August 31, 2004, claimant complained of back and knee pain. (Tr. 159). He also reported insomnia. Dr. Madisetti added Ambien to claimant's medications.

On September 28, 2004, Dr. Madisetti noted that claimant's chief complaint was of back pain with no new complaints or side effects. (Tr. 157). Claimant reported that the pain affected his sleep and daily activities. He complained of anxiety and strong pain with intermittent breakthrough pain. His quality of life was improved on medications.

Dr. Madisetti's impression was lumbalgia and anxiety. He reduced claimant's Soma dosage, and continued to prescribe Methadone, Lorcet, and Xanax.

On January 18, 2005, claimant complained of back and lower limb pain. (Tr. 150). He continued to have anxiety and breakthrough pain. Dr. Madisetti continued claimant's medication regimen and discussed dietary modifications.

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on March 15, 2005, claimant was 51 years old. (Tr. 195). He had completed the eighth grade. He had worked as a roustabout and roughneck. (Tr. 196, 201). He reported that he had last worked as a grain elevator operator, and had stopped working after he had injured his back and knee. (Tr. 196).

Claimant complained of pain in his left knee and in his back. (Tr. 198). He also reported having trouble sleeping because of back pain. (Tr. 204). He testified that he was taking Methadone, Lorcet, and Xanax twice a day, as well as Soma for pain. (Tr. 197-98).

Regarding activities, claimant testified that he took out the trash, did a little weeding, bathed and dressed himself, did laundry, prepared meals, and drove. (Tr. 198, 204). He also went grocery shopping. (Tr. 198-99). Additionally, he visited with his grandmother and his stepfather. (Tr. 203).

As to restrictions, claimant testified that he could sit for about an hour before having to get up and move around. (Tr. 199). He stated that he could stand for about 15 minutes. He reported that he could walk about three or four blocks. (Tr. 203). He complained that it was hard for him to bend and squat. (Tr. 200).

**(6) The ALJ's Findings**. Claimant argues that: (1) the ALJ erred in failing to give proper weight to the opinions of his treating physicians, resulting in an

7

assessment of his RFC that was unsupported by the evidence, and (2) claimant's prior applications were implicitly reopened in the ALJ's January 28, 2003 decision, resulting in a failure to give proper weight to the opinions of his treating physicians concerning his ability to perform substantial gainful activity in connection with his prior applications. Because I find that the ALJ failed to properly evaluate the opinions of claimant's treating physicians, as well as the side effects of his medications, I recommend that this case be **REMANDED** for further proceedings.

Claimant argues that in the January 28, 2003 decision, his prior applications were "implicitly reopened." (rec. doc. 9, p. 7). In that decision, which dealt with the application for disability insurance benefits filed on December 21, 2000, ALJ Wahlder noted that claimant had previously filed an application dated November 5, 1998, which had resulted in an unfavorable decision dated May 17, 1999. (Tr. 25). He further observed that claimant had also filed an application on December 19, 2002. ALJ Wahlder stated that his decision of January 28, 2003 would dispose of the December 21, 2000 application, as well as the application dated December 19, 2002 from July 23, 1996 through claimant's date last insured, December 31, 2001.

Claimant argues that ALJ Wahlder "implicitly or *defacto* reopened all of his prior applications from July 23, 1996" in his 2003 decision. (rec. doc. 11, p. 2). However, the decision dated January 28, 2003 was not appealed. Thus, that decision

8

became administratively final. 20 C.F.R. § 404.955 ("[t]he decision of the administrative law judge is binding on all parties to the hearing unless – (a) You or another party request a review of the decision by the Appeals Council within the stated time period"); *see also* § 416.1455. Further, the procedure for reopening the 2003 decision was not followed. 20 C.F.R. §§ 404.987, 416.1487.[2] Accordingly, the undersigned finds that the ALJ properly considered the evidence only subsequent to January 28, 2003 pertaining to the application for SSI dated March 3, 2003. (Tr. 14-20).

However, I do find merit in the first assignment of error, that is, that the ALJ erred in assessing the opinions of claimant's treating physicians. Both of claimant's treating orthopedic surgeons, Dr. Adatto and Dr. Watermeier, opined that claimant was permanently disabled. (Tr. 125, 142). Additionally, claimant's treating pain specialist, Dr. Madisetti, noted that as of his last visit, claimant continued to have breakthrough pain for which he was taking narcotic medications. (Tr. 150).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great

---

[2]The Social Security regulations provide that a decision may be reopened: (a) within 12 months of the date of the notice of the initial determination, for any reason;(b) within four years of the date of the notice of the initial determination if the Social Security Administration finds good cause, as defined in § 404.989 to reopen the case; or (c) at any time if it was obtained by fraud or similar fault, or other specified circumstances which are inapplicable here. 20 C.F.R. § 404.988; *see also* § 416.1488.

9

weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Here, the ALJ gave no weight to Drs. Watermeier and Adatto's statements that claimant was permanently disabled because he found that they were not supported by the record. (Tr. 17). However, the ALJ failed to evaluate the elements for discounting the treating physicians' opinions as required by the Fifth Circuit. (rec. doc. 11, p. 4); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing *Newton*, 209 F.3d at 456). *Myers* held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment,

frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (citing *Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case. This constitutes error.

Additionally, the record reflects that while the ALJ acknowledged that claimant was taking Methadone and Lorcet, he failed to consider any side effects from those medications. (Tr. 16; rec. doc. 9, pp. 6-7). These are both narcotic medicines designed for the relief of moderate-to-severe pain. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). The ALJ did not take the side effects of claimant's medications into consideration, and his failure to do so was error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to evaluate the opinions of claimant's treating physicians under *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), and *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), as well as to consider the side effects

from claimant's medications. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 9th day of November, 2006, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE